IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES KENNETH KEELS, JR.    §
(TDCJ No. 1920712),    §
    §
        Petitioner,    §
    §
V.    §    No. 3:18-cv-60-M-BN
    §
LORIE DAVIS, Director    §
Texas Department of Criminal Justice,    §
Correctional Institutions Division,    §
    §
        Respondent.    §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner James Kenneth Keels, Jr., a Texas inmate, filed a *pro se* application

for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. This resulting action

has been referred to the undersigned United States magistrate judge for pretrial

management under 28 U.S.C. § 636(b) and a standing order of reference from Chief

United States District Judge Barbara M. G. Lynn. The State filed a response opposing

relief, *see* Dkt. No. 18, to which Keels filed a reply. *See* Dkt. No. 19. For the reasons

explained below, the Court should deny Keels's federal habeas petition.

**Applicable Background**

"A jury found [petitioner] James Kenneth Keels, Jr. guilty of the offenses of

possession of a penalty-group 1 controlled substance in an amount of over four grams

but under 200 grams and tampering with physical evidence and assessed his

punishment, enhanced by prior felony convictions, at ninety-nine years' imprisonment

for each offense, to be served concurrently. " *Keels v. State*, No. 10-14-00140-CR, No. 10-14-00141, 2015 WL 4599621, at *1 (Tex. App. – Waco July 30, 2015, pet. ref'd.); *see State v. Keels*, No. C-34828-CR, No. C-34855-CR (Cty. Ct. at Law, Navarro Cty., Tex.). The Texas Court of Criminal Appeals ("CCA") denied Keels's petition for discretionary review on November 18, 2015. *See In re Keels*, No. PD–1107–15 (Tex. Crim. App. 2015). The Supreme Court denied Keels's petition for a writ of certiorari on March 21, 2016. *See Keels v. Texas*, 136 S. Ct. 1459 (2016).

Keels filed two state applications for writ of habeas corpus claiming his attorney was constitutionally ineffective on numerous grounds, prosecutorial misconduct by using known perjured testimony and by withholding evidence favorable to the defense, juror misconduct/bias, and that he was convicted in violation of double jeopardy. *See* Dkt. No. 17-6 at 57-65; Dkt. No. 17-14 at 54-62. On March 29, 2017, the CCA denied Keels's applications without written order on the findings of the trial court a without hearing. *See Ex parte Keels*, WR-66,781-02, WR-66,781-03 (Tex. Crim. App. Mar. 29, 2017); Dkt. No. 17-5, Dkt. No. 17-13.

In his timely-filed federal habeas application, Keels raises the following grounds for relief:

1. the prosecution engaged in misconduct by eliciting false testimony to justify an unlawful traffic stop;

2. the prosecution committed misconduct by withholding the name of a confidential informant;

3. juror bias;

2

4. the evidence was legally insufficient to support the tampering with the evidence conviction;

5. Ineffective assistance of counsel by:

    a. failing to investigate or interview Sergeant Clint Andrews regarding the identity of a confidential informant,

    b. failing to assert an entrapment defense,

    c. failing to object to the prosecution's failure to provide ten-days' notice that it had granted immunity to witness Elizabeth Perez,

    d. failing to interview and subpoena Captain Bailey, who could have testified that the police video had been tampered with and edited and had malfunctioned,

    e. failing to disclose that his brother lived with Keel's wife while Keels was in jail, and

    f. failing to convey a plea offer to Keels,

6. jury misconduct during punishment-phase of trial.

*See* Dkt. No. 3 at 6-8.

## Legal Standards and Analysis

I.   <u>Unexhausted Claims</u>

It is well-settled that federal review of a claim is procedurally barred if the last state to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Additionally, if the state court explicitly invokes a procedural bar and alternatively reaches the merits of a defendant's claims, a federal court is still bound by the state procedural default. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989). Where a state court has explicitly relied on a procedural bar, a petitioner may not obtain federal habeas

corpus relief absent a showing of cause for the default and actual prejudice that is attributable to the default, or that the federal court's failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. A miscarriage of justice in this context means that the petitioner is actually innocent of the crime for which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

Keels claims the prosecution engaged in misconduct by eliciting false testimony justifying the unlawful traffic stop, *see* Dkt. No. 3 at 6; Dkt. No. 4 at 21-28, and that the prosecution committed a *Brady* violation by withholding the name and extent of involvement of a confidential informant. *See* Dkt. No. 3 at 7; Dkt. No. 4 at 31-41. Keels also claims one of the jurors was biased. *See* Dkt. No 3 at 7; Dkt. No. 4 at 29-30. The CCA denied Keels's state habeas corpus writs without written order on findings of trial court without a hearing. *See* Dkt. No.17-5; Dkt. No. 17-13. Regarding these three claims, the trial court made the following findings and determinations:

> 10. On April 4, 2016 Applicant now filed Applications for Writ of Habeas Corpus in each cause, alleging five identical grounds for relief in each application, namely:
>
> ....
>
> II. Prosecution used known perjured testimony to obtain conviction, denying Keels of his right to a fair trial under the Sixth Amendment and due process under the Fifth and Fourteenth Amendments. (Application at 8, verbatim)
>
> III. Three biased jury members were seated over an unpreserved objection by counsel. This deprived Keels of a fair trial and due process

in violation of the Fifth, Sixth and Fourteenth Amendments. (Application at 10, verbatim)

IV. Prosecution withheld exculpatory and impeachment evidence that was material to guilt or innocence. This denied Keels his right to due process under the Fifth and Fourteenth Amendments. (Application a:t 12, verbatim)

V. Keels multiple convictions and punishments for the offenses of Tampering with Physical Evidence and Possession of a Controlled Substance was in violation of double jeopardy. (Application at 14, verbatim)

....

19. Applicant offers no explanation why his grounds 2, 3, 4, or 5 were not addressed on direct appeal. Article 11.07 "should not be used to litigate matters which should have been raised on appeal." *Ex parte Banks*, 769 S.W. 2d 539, 540 (Tex. Crim. App. 1989).

*See* Dkt. No. 17-6 at 252-53, 255; Dkt. No. 17-14 at 249-250, 252.

By adopting the findings and conclusions of the trial court, with its citation to *Ex parte Banks*, the CCA expressly and unambiguously relied on a state procedural bar determination. *See Ex parte Banks*, 769 S.W. at 540 (stating "[t]he Great Writ should not be used to litigate matters which should have been raised on appeal."). The Fifth Circuit has recognized that this state rule is independent and adequate to bar federal habeas corpus review. *See Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006). Thus, Keels's claim Nos. 1, 2, and 3 are procedurally defaulted. *See Harris*, 489 U.S. at 264-65; *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). In his reply brief, Keels

appears to argue that he failed to raise these issues on direct appeal due to ineffective assistance of his appellant attorney. *See* Dkt. No. 19 at 3. But a claim of ineffective assistance of appellate counsel alleged as a cause for a procedural default must itself either be exhausted or supported by a showing of cause and prejudice for the failure to exhaust. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Keels has not made this showing, and these three grounds for relief are therefore procedurally barred. *See Coleman*, 501 U.S. at 750.

Additionally, claims 4 and 5(a), 5(b), 5(c), 5(d), and 5(e) are unexhausted and also procedurally-barred. A habeas petitioner must fully exhaust state remedies before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92–93 (5th Cir.1989). In Texas, a prisoner must present each claim to the CCA in a petition for discretionary review or an application for state post-conviction relief. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir.1986). As the Fifth Circuit recently explained,

> [t]he exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and "a desire to protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (internal quotation marks omitted) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). To satisfy these important purposes, a petitioner must "fairly present[ ]" his legal claim to the highest state court in a procedurally proper manner. *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir.2004). The state courts must be apprised of the constitutional foundation of the claim. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam).

> Finally, " '[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.' " *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam)). Consequently, " 'where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement.' " *Id.* (quoting *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir.1983)).

*Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Neville v. Dretke*, 423 F.3d 474, 479 (5th Cir.2005) (holding unexhausted claims ineligible for stay when state court would find them procedurally barred).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. art. 11.071, § 5. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir.2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir.2001). An exception to this bar allows federal

habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Keels's "insufficiency of the evidence" claim (Claim 4), and five of his six ineffective- assistance-of-trial-counsel ("IAC") claims (Claim 5(a-e)), are unexhausted and procedurally barred.

Keels has neither shown that his claims would be allowed in a subsequent habeas proceeding in state court under Texas law nor asserted the "fundamental miscarriage of justice" exception to procedural bar.

Keels claims that all of the IAC claims in his Section 2254 petition "were raised in the State habeas writ, and also claimed for the first time in some cases in the instant Federal writ" Dkt. No. 19 at 1. He fails to identify which claims he believes were, and were not, raised in his state habeas writ. In any event, a review of Keels's state habeas writs demonstrates that Keels's IAC claims 5(a), 5(b), 5(c), 5(d), and 5(e) were not presented therein. *See* Dkt. No. 17-6 at 52-109, Dkt. No. 17-14 at 49-106.

Citing the United States Supreme Court case, *Trevino v. Thaler*, 569 U.S. 413 (2013), Keels argues that "the U.S. Supreme Court has allowed IATC claims to be brought up for the first time in a federal habeas corpus application." *See* Dkt No. 19 at 1. The limited exception to procedural bar for IAC claims created in *Martinez v. Ryan*, 566 U.S. 1 (2012), found applicable to Texas cases in *Trevino,* arguably could apply if

Keels's claims against his trial counsel were substantial. But, for the reasons discussed below, the *Martinez/Trevino* exception to procedural bar does not apply here because Keels has not shown that his underlying IAC claims are substantial.

In *Martinez*, the Supreme Court held that,

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17. In 2013, the Supreme Court confirmed that *Martinez* applied to Texas prisoners who technically had the ability to bring their IAC claim on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. *See Trevino*, 569 U.S. at 428-29.

The narrow *Martinez/Trevino* exception to procedural bar only applies if a petitioner can show that the IAC claim presented is "substantial – that is, that it has 'some merit.'" *Cutsinger v. Stephens*, 576 F. App'x 422, 430 (5th Cir. 2014) (abrogated on other grounds by *Ayestas v. Davis*, 138 S. Ct. 1080 (2018) (quoting *Martinez*, 566 U.S. at 14); *see id.* (noting that, "if a petitioner's IAC claim is not substantial enough to earn a [certificate of appealability], it is also not substantial enough to form the basis for excusing the procedural default" (citing *Martinez*, 566 U.S. at 14 (in turn citing *Miller–El v. Cockrell*, 537 U.S. 322 (2003)))); *see also Speer v. Stephens*, 781 F.3d 784, 785 & n.4 (5th Cir.2015) (noting the "limited nature" and "narrowness" of the exception (citing *Martinez*, 566 U.S. at 16-17; *Trevino*, 569 U.S. at 431 (Roberts, C.J.,

dissenting) ("We were unusually explicit about the narrowness of our decision [in *Martinez*].")); *Garcia v. Director*, TDCJ–CID, 73 F. Supp. 3d 693, 754–55 (E.D. Tex.2014) ("[T]he Supreme Court opened the door slightly for a showing of cause and prejudice to excuse the default in *Martinez v. Ryan* ... and *Trevino v. Thaler* ....").

Consistent with this authority – holding the substantiality that Keels must show equivalent to the substantiality that must be shown to earn a COA – and because Keels was *pro se* in the "initial-review collateral proceeding," the undersigned has reviewed his five procedurally defaulted IAC claims set out in the Section 2254 petition and supporting memorandum, *see* Dkt. No. 3 at 6; Dkt. No. 4 at 1-15, under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether he has "demonstrate[d] that reasonable jurists would debate 'whether the petition states a valid claim of the denial of a constitutional right'" *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir.2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478, 484 (2000)) (citations omitted). And, as demonstrated below, Keels has not shown that the IAC claims he asserts are substantial. That is, he has not demonstrated that reasonable jurists would debate either that the performance of trial counsel fell below an objective standard of reasonableness or, assuming that performance did, that Keels was prejudiced by trial counsel's substandard performance such that he was deprived "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *see id.* at 687–88, 692.

A.     <u>Failure to Interview/Investigate Sergeant Andrews</u>

Keels makes the general claim that his counsel was ineffective for failing to investigate Sergeant Clint Andrews. *See* Dkt. No. 4 at 8-9. Keels states, without further support, that had his counsel "interviewed Sgt. Andrews he would have known that the State's assertion and the indictment were incorrect and faulty. It was a warantless arrest and subsequent traffic violation, and there was a C.I. (Perez). This would have opened the door to dismissal of charges under [the Texas Rules of Evidence]." *Id.* at 9.

A petitioner alleging an investigation is deficient "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (citation omitted). Here, Keels's statement is mere speculation upon speculation. He speculates that the State's assertion and indictment were faulty and that his girlfriend at the time of his arrest, Elizabeth Perez ("Perez"), was the State's confidential informant. But he provides no evidence from the record to demonstrate the indictment was faulty. Additionally, Keels provides no record evidence to demonstrate that Perez was a confidential informant or that interviewing Andrews would reveal any information regarding these issues. Keels simply speculates that Andrews would have possessed and conveyed that knowledge to Keels's counsel. In fact, Keels's attorney filed a motion to reveal the name of the confidential informant. *See* Dkt. No. 16-5 at 44-45; Dkt. No. 16-6 at 41-42. After conducting a hearing on the matter, the trial judge denied the motion. *See* Dkt. No. 16-5 at 61; Dkt. No. 16-6 at 58. Furthermore, in his memorandum in support of his petition, Keels acknowledges that he is not certain Perez was a

11

confidential informant. *See* Dkt. No. 4 at 14 (stating "Keels is aware that the nexus has not 'officially' been made that Perez or Amihole are the C.I.(s)").

Keels fails to show what interviewing Andrews would have uncovered and how his defense would have benefitted from the information. *Nelson v. Hargett*, 989 F.2d 847, 850. This conclusory claim fails to demonstrate counsel provided ineffective assistance. Keels has failed to "affirmatively prove, not just allege, prejudice." *Strickland*, 466 U. S. at 693.

B.    <u>Failure to Raise an Entrapment Defense</u>

Keels argues that his counsel provided ineffective assistance by "fail[ing] to employ the affirmative defense of entrapment." Dkt. No. 4 at 10. Texas law states:

> (a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

TEX. PENAL CODE § 8.06. Keels appears to argue that Perez became a confidential informant for the police in order to avoid prosecution herself. *See* Dkt. No. 4 at 10-14. And he asserts that that she cooperated with the police to lure Keels into taking possession of the methamphetamine so that the police could make an illegal traffic-stop of Keels and discover the drugs. *See id.*

Keels, again, is relying on mere speculation. As explained above, the trial court denied Keels's motion to reveal the name of the confidential informant, *see* Dkt. No. 16-5 at 61; Dkt. No. 16-6 at 58, and Keels admits that he cannot independently

12

demonstrate that Perez was an informant, *see* Dkt. No. 4 at 14. Furthermore, at trial Perez provided uncontradicted testimony that she had not been arrested or stopped by the police on the day of Keels arrest, *see* Dkt. No. 16-12 at 159-60, and had not received any information that the police had any case against her, *see id.* at 167. She additionally testified that, on the day of Keels's arrest, Keels discovered that she had a bag of methamphetamine and became upset about it, *see id.* at 168-69, so she gave him the drugs, *see id.* Finally Perez testified she did not have any contact with the police on the day of the arrest, or for months after the arrest. *See id.* at 174-75.

And Detective Stan Farmer, who made the initial traffic-stop of Keels, *see* Dkt. No. 16-12 at 247, testified that he did not know Perez and would not be able to recognize her if she were in the courtroom, *see id.* at 253. He additionally testified that he did not know of any conspiracy to plant evidence and frame Keels, and had not had any conversations with any other law enforcement officers about any scheme to plant evidence on anybody. *See* Dkt. No. 16-20 at 85. Detective Garrett Harrell, who was with Farmer on the traffic-stop, *see* Dkt. No. 16-12 at 44, testified that he had no knowledge of Perez prior to the day of Keels's arrest, and that he did not currently know her., *see id.* at 83. He additionally testified that there "was no plan or scheme between [him] and Detective Farmer to place this bag of methamphetamine in the grass." *Id.*

The record does not support an entrapment defense. Furthermore, although Keels argues that his counsel "was unreasonable for his failure to investigate further

and pursue the entrapment defense," Dkt. 4 at 15, he fails to allege, or demonstrate, a reasonable probability that, but for his counsel's alleged deficient performance, the result of his trial would have been different.

Because Keels fails to demonstrate he was prejudiced, this claim fails. *See Strickland*, 466 U.S. at 693.

C.    Failure to Object

Keels asserts that his counsel was ineffective for failing to object to the prosecution's failure to provide a ten-day notice that it had granted immunity to witness Perez. But Keels provides no support for this allegation.

Keels states that "it would have been abuse of discretion to overrule the objection under the circumstances." Dkt. No. 4 at 15. This is insufficient to demonstrate an ineffective-assistance-of-counsel claim. *See Strickland*, 466 U.S. at 690-94.

Instead, Keels claims that, because the State provided Perez with immunity, she became "an accomplice as a matter-of-fact" and, therefore, his counsel was deficient for "fail[ing] to treat Perez as an accomplice as a matter-of-fact at trial." Dkt. No. 4 at 15. He also states that his counsel "failed to request an instruction on accomplice as a matter-of-fact and as a matter of law." *Id.* at 16.

Keels does not further explain his allegation that, because Perez received immunity, she is therefore an accomplice. Presumably, Keels is attempting to identify Perez as an accomplice to his crime of possession of a controlled substance because Keels had received a package of methamphetamine from Perez on the same day that

Keels was arrested. But this did not make Perez an accomplice. "An accomplice witness is one who participates with a defendant before, during, or after the commission of a crime." *McFarland v. State*, 928 S.W.2d 482, 514 (Tex. Crim. App.1996) (abrogated on other grounds by *Mosley v. State*, 983 S.W. 2d 249. But the participation must involve an affirmative act committed by the witness to promote the commission of that offense. *See id.*

The only testimony regarding Keels's receiving the bag of methamphetamine from Perez came from Perez herself. At trial, Perez stated the following:

> Q. And while Mr. Keels was at the apartments or wherever you were, helping you get into your car, did he become aware that you – that you had that bag of methamphetamine?
>
> A. Yes, sir.
>
> Q. Okay. At some point before you left, did you give it to him?
>
> A. Yes, sir.
>
> Q. Was he unhappy about you having that bag of methamphetamine in middle of Corsicana?
>
> A. Extremely.
>
> Q. Okay. Was he unhappy that you had it or was he unhappy that you had it in the middle of Corsicana?
>
> A. I'm really not quite for sure which one. I just know he was unhappy, period.

Dkt. No. 16-2 at 169. Perez's testimony does not demonstrate that she was an accomplice to Keels's crime. Perez's handing over the methamphetamine to Keels

because Keels was upset that she had it in the first place does not demonstrate that Perez committed an affirmative act to promote the commission of Keels's crime. If anything, the testimony suggests Perez did not willingly give the drugs to Keels but only did so after he became upset that she had the drugs.

And Keels provides no independent record evidence to demonstrate Perez was an accomplice.

Keels fails to demonstrate a reasonable probability that, had his attorney requested an accomplice-witness jury instruction, it would have been granted or that the result of his trial would have been different. He has failed to demonstrate his counsel was ineffective. *See Strickland*, 466 U. S. at 694.

D.    Failure to Subpoena Expert Witness

Keels argues that his counsel was ineffective for failing to subpeona "Captain Bailey, who was an expert on that video recording system." Dkt. No. 4 at 17. Keels asserts that the validity of the traffic stop, whether the video had been tampered with or edited, and whether the video recording system was malfunctioning was his counsel's main defense strategy. *See id.* He states that "Captain Bailey could have explained all of it." *Id.* at 18.

Complaints of uncalled witness are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because assertions about what a witness would have stated are speculative. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on such a claim, a petitioner must name the witness, demonstrate that the witness was available to

16

testify and would have done so, set out the content of the proposed testimony of the witness, and show that the testimony would have been favorable to a particular defense. *See id.*

Keels has not demonstrated that Bailey was available to testify or that he would have done so. He additionally fails to demonstrate what Bailey's testimony would have been.

As a result, Keels has failed to demonstrate he suffered prejudice because his counsel failed to have Bailey testify at trial. And, to the extent Keels argues that his appellate counsel provided ineffective assistance for failing to raise this ground on appeal, *see* Dkt. No. 4 at 18, the argument fails. Because Keels fails to demonstrate that his trial counsel provided ineffective assistance for not calling Bailey as a witness, he also cannot demonstrate he was prejudiced by his appellate attorney's decision not to raise this claim.

### E.    Failure to Disclose Information / Counsel Misconduct

While Keels labels this IAC claim as "Misconduct," he only lists actions which, presumably, Keels believes caused his counsel to provide ineffective assistance. As an example, Keels states that his counsel's brother and Perez "were living together while Keels was in jail and when Keels was married to Perez." Dkt. No. 4 at 19. He also alleges that his counsel's mother was caring for Perez's child and was fighting with Perez for custody of the child. *See id.* Even assuming these claims are true, Keels fails to allege that they caused his counsel to provide deficient performance or to demonstrate in any way how Keels was prejudice by any supposed deficient

17

performance by his counsel. This vague and conclusory claim fails to meet either of the required *Strickland* prongs in order to demonstrate ineffective assistance of counsel.

Keels has failed to show that his ineffective-assistance-of-trial-counsel claims have any merit sufficient to overcome the *Martinez* hurdle, and thus, he has failed to make the showing of debatability required for issuance of a COA.

Thus, Keels's claims are "not substantial enough to form the basis for excusing the procedural default." *Cutsinger*, 576 F. App'x at 430.

II.    Exhausted Claims

Keels fairly presented his remaining two claims – (1) that his counsel was ineffective for failing to convey a plea offer to Keels and (2) the the jury committed misconduct during the punishment phase of the trial – to the CCA.

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be

"examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ...

19

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." Id. Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

20

comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); cf. *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a Section 2254 petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on

to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

A.    Ineffective Assistance of Counsel

Keels contends that his counsel provided ineffective assistance by failing to notify him of a plea bargain. Dkt. No. 4 at 18.

The Court reviews claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *See James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ____, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

23

whose result is reliable." *Id*. at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting

*Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id*. at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an

ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a de novo review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Johnson v. Sec'y, DOC*, 643 F.3d 907,

26

910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

Keels claims his counsel provided ineffective assistance by failing to notify Keels "about any plea offers from the State." Dkt. No. 4 at 18. He states that, "had he known of the plea offer, he most likely would have accepted it to avoid paying $35,000 to [his counsel]." *Id.* Keels provides no further support for his general claim and makes a conclusory argument that his counsel was ineffective. This is insufficient. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (stating "[m]ere conclusory statements do not raise a constitutional issue in a habeas case.").

Conversely, in his counsel's affidavit to the state habeas court, counsel stated the following:

> A Plea Negotiation Offer was sent by the Navarro County District Attorney's Office and a copy of the offer was mailed to Defendant on April 5, 2013. A copy of the offer and letter are attached hereto as Exhibit "A." The plea offer states that the State will agree to the plea offer not later than 20 days prior to the initial Jury Trial date listed on the Court's Scheduling Order. The initial trial date for this case was August 19, 2013 and the plea offer would have had to be accepted by July 31, 2013. A copy of the Scheduling Order is attached hereto as Exbit "B." Defendant repeatedly advised that he was innocent and refused to accept the offer.

Dkt. No. 17-21 at 17; Dkt. No. 17-24 at 17.

The trial court made the following findings and determinations:

> 7. Applicant filed a Writ of Habeas Corpus with the Court

27

of Criminal Appeals.

8. On October 5, 2016, the writ was held in abeyance and the Criminal Court of Appeals ordered the trial court to resolve the fact issues and prepare supplemental Findings of Fact and Conclusions of Law as to whether the Appellant's trial counsel's performance was deficient, specifically concerning whether trial counsel conveyed a plea offer in these two cases.

9. On October 12, 2016, the trial court ordered trial counsel to respond to Applicant's claims of ineffective assistance of counsel.

10. The trial court received an affidavit from trial counsel, Michael J. Crawford, on November 23, 2016. (SEE attached Exhibit A)

11. Further, according to Assistant District Attorney, Will Thompson, the State's plea offer included a term that it expired 20 days prior to the initial trial date on the Court's scheduling order, which appears to be August 19, 2013. Additionally, Mr. Thompson's recollection is that the State also communicated to trial counsel that there would be no plea agreement after a hearing on Applicant's Motion to Suppress or after Applicant was arrested for Assault. Mr. Thompson further states that he is certain that there was no offer available for several weeks prior to the trial in this cause.

. . . .

1. Trial counsel conveyed the plea offer made by the State in each cause to the Applicant.

2. The defense at trial was one of innocence and therefore, it is clear that the Applicant rejected the plea offer.

3. Applicant has failed to show that trial counsel's performance failed to constitute reasonably effective assistance and that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different.

4. Applicant's claim should be dismissed.

5. Applicant is being lawfully confined.

6. No right or privilege guaranteed to Applicant by the United States Constitution or by the Texas Constitution has been violated or abridged in any way.

7. Applicant's claim for relief is not meritorious.

8. The Defendant's application should be denied.

Dkt. No. 17-21 at 15-16; Dkt. No. 17-24 at 15-16.

Keels fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03; *Childress v. Johnson*, 103 F.3d 1221, l224-25 (5th Cir. 1997).

As such, Keels fails to show there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

    B.    <u>Jury Misconduct</u>

Keels argues that "the jury erred and committed misconduct by considering the parole laws as some jurors freely admit." Dkt. No. 4 at 44. Although Keels did not raise the issue in his state habeas petitions, he did raise the issue in his direct appeal. *See Keels v. State*, No. 10-14-00140-CR, No. 10-14-00141, 2015 WL 4599621 (Tex. App. – Waco July 30, 2015, pet. ref'd.). And the CCA refused discretionary review. *See id.*

But Keels raised only an allegation of a violation of state law to the CCA. Keels's

sole issue on direct appeal was:

> Is it permissible for a trial attorney to question any juror post-trial in order to determine whether the jury violated the jury charge and thereby usurped the Parole Board powers delegated to the Executive Department of our government under the Texas State Constitution, Article 4 Section 11.

*Id.* at *1.

Likewise, here, Keels raises solely a state law claim. *See* Dkt. No. 3 at 8; Dkt. No. 4 at 44-46. Keels is ineligible for relief on claims of state law violations. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (stating "federal habeas corpus relief does not lie for errors of state law.") (citation omitted); *see also West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996) (stating "asserted violations of state law do not constitute a basis for federal habeas relief.").

Keels also appears to argue that Texas Rule of Evidence 606(b) is unconstitutional because it differs from a similar federal evidence rule. *See* Dkt. 4 at 46-47. Keels did not present this claim to the CCA, and it is therefore is unexhausted. *See Nickleson*, 803 F.3d at 753. It is additionally procedurally barred from federal review. *See Beazley*, 242 F.3d at 264 (citing *Coleman*, 501 U.S. at 735 n. 1).

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 20, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE